UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JONATHAN BARAHONA and HECTOR
HERNANDEZ,

                    **Plaintiffs,**

                 **v.**

PARADISE TREE SERVICE & LANDSCAPE
CORP. and WILLIAM NIETO,

                  **Defendants.**

      **Case No. 21-cv-05400 (GRB)(LGD)**

**MEMORANDUM OF LAW
IN SUPPORT OF THE DEFENDANTS'
MOTION FOR A NEW TRIAL
AND OTHER RELIEF**

1.      The Defendants, PARADISE TREE SERVICE & LANDSCAPE CORP. and WILLIAM NIETO, pursuant to <u>Federal Rule of Civil Procedure (FRCP) Rule 59</u>, and more specifically, <u>FRCP RULE 59(a)(1)(B)</u>, the Defendants respectfully request the Court grant a partial new trial of the Plaintiffs' Second Cause of Action in which the trial court found the Defendants liable to the Plaintiffs for unpaid overtime under the <u>New York State Labor Law (NYLL)</u> and awarded the Plaintiffs damages as against the Defendants. The Defendants seek a new trial of this cause of action in its entirety, as well as the setting aside of the judgment, order or verdict regarding this cause of action and damage award.

2.      The Defendants respectfully request that if they should be granted a new partial trial, then pursuant to <u>U.S. CONST. AMEND. VII</u>, <u>FRCP RULE 38</u>, <u>FRCP RULE 39</u>, and <u>FRCP RULE 59</u>, the trial is by jury, or if not, then Defendants are granted a new partial bench trial.

3.      The Defendants seek additional relief pursuant to <u>FRCP RULE 59</u>.  More specifically, pursuant to <u>FRCP RULE 59(a)(2)</u>, the Defendants respectfully request the Court to open the

judgment after trial, take additional testimony, amend the findings of fact and conclusions of law or make new ones and direct the entry of a new judgment.

4.      In addition, and pursuant to **FRCP RULE 59(e)**,  the Defendants respectfully request the Court to alter or amend the judgment resulting from the verdict.

5.      Pursuant to **FRCP RULE 52** and specifically **FRCP RULE 52(a) and (b)**, the Defendants respectfully request the Court to Set Aside, Add and/or Amend the Court's findings and Vacate or Amend the Judgment which resulted or will result from the decision issued by the Court after the recent trial of this matter.

6.      Pursuant to **FRCP RULE 60**, the Defendants respectfully request the Court to relieve both Defendants from the Judgment/Order.  Specifically, the Defendants should both be relieved from the Judgment/Order pursuant to **FRCP RULE 60(b)(3)**, due to a Fraud being perpetrated on the Court; pursuant to **FRCP RULE 60(b)(4)**, due to the Judgment/Order being Void; and pursuant to **FRCP RULE 60(b)(6)**, due to the Judgment/Order lacking any reason.

7.      Pursuant to **FRCP RULE 62**, the Defendants respectfully request the Court to stay the enforcement of any judgment against the defendants, including but not limited to judgments resulting from the recent trial or the corporate defendant's default.

8.      The Defendants respectfully request the Court grant such other and further relief as this Court deems just and proper.

## **ARGUMENT**

9.      The court should grant a new trial because the court committed a manifest error of law. **Brown v. Wright, 588 F. 2d 708, 710 (9th Cir. 1978)**.

10.     The court should grant a new trial because the court committed a manifest error of fact. **Brown v. Wright, 588 F. 2d 708, 710 (9th Cir. 1978)**.

11.     The trial court erred in applying the law by incorrectly calculating the plaintiffs' hourly wages and thereby erred in calculating the plaintiffs' unpaid hourly overtime wages.

12.    The Defendants' position is they are not liable for any damages to the Plaintiffs.  For the purpose of demonstrating the court's error in applying the law, we will assume arguendo as the court did that the defendants are liable.

13.    On plaintiffs' second cause of action alleging unpaid overtime wages pursuant to the <u>NYLL</u>, the court determined the plaintiff, BARAHONA, was not paid overtime wages in the amount of $42,750.00.  The court awarded 100% of that amount as liquidated damages or an additional $42,750.00, totaling $85,500.00.

14.    On plaintiffs' second cause of action alleging unpaid overtime wages pursuant to the <u>NYLL</u>, the court determined the plaintiff, HERNANDEZ, was not paid overtime wages in the amount of $10,125.00.  The court awarded 100% of that amount as liquidated damages or an additional $10,125.00, totaling $20,250.00.

15.    The Court also directed the plaintiffs' attorney to file a judgment for aforesaid amounts plus pre-trial interest, counsel fees and costs.

16.    In addition, the Court directed Plaintiffs' attorney to submit a default judgment in the same amounts against the corporate defendant, Paradise Tree Service & Landscape Corp.

17.    The above damages are duplicative, excessive and a manifest error of law and fact.

18.    All the testimony by the plaintiffs and defendant, William Nieto, at trial, depositions and prior affidavits, corroborate that the plaintiffs were paid on a salary basis per day.  At trial, the plaintiffs testified they were paid $150.00 per day as did the defendant. See Exhibit C.  At each of the parties' depositions (Exhibits D, E and F), the plaintiffs testified that they were paid $150.00 per and Plaintiff Barahona admitted that he never worked 10 hours any day, and probably never worked as many as 8 hours per day and maybe not 6 hours per day.  See Exhibit D, P.22-27.  The Defendant, NIETO, always testified that the plaintiffs were paid a salary per day.  See Exhibit F.

19.    The court found that the plaintiffs' regular hourly pay was equal to $18.75 and their hourly overtime pay was equal to $28.125.  The court erred in computing these hourly and overtime pay amounts.   The court erred when computing the pay rates because it divided each plaintiff's total

3

weekly pay of $750.00 by 40 hours and determined the result was the regular hourly pay rate for each Plaintiff.

20.     However, the trial court erred by computing the regular and overtime rates for each plaintiff as described above.  The <u>NYLL ART, 6,</u> calculates the hourly regular pay rate of salaried or straight time workers differently.  According to the <u>NYLL</u>, in order to calculate a salaried worker's regular hourly pay rate, in order to determine overtime pay for hours worked more than 40 during a work week, you divide the total pay received during the week by the number of hours worked.  In this case $750.00 should be divided by 50 (the court determined this was the amount paid weekly and the hours worked per week, by each plaintiff).

21.     Accordingly, in this case, the regular hourly pay rate for each plaintiff is $750.00 divided by 50, which equals $15.00 per hour.  To calculate the overtime hourly pay rate, you multiply $15.00 times 1.5 which equals $22.50.  $22.50 per hour is the hourly overtime pay rate for each Plaintiff in this action, pursuant to the <u>NYLL ART. 6</u>.

22.     The court determined, in the case, the Plaintiff, BARAHONA, worked for the defendants for 4 years and 8 weeks, and he was not paid overtime wages for 10 hours per week at a rate of $281.25 per week in unpaid overtime wages multiplied by 36 weeks per year plus an additional 8 weeks, which equals 152 weeks.

23.     In Plaintiff, HERNANDEZ's case the court reasoned the plaintiff was owed overtime wages for the "busy season" for one year.  For both plaintiffs, the court determined the "busy season" and therefore the period of time in which overtime wages were owed, was 36 weeks from March to sometime in November every year.

24.     Consequently, the court awarded HERNANDEZ unpaid overtime wages for 36 weeks, at 10 hours per week, at a rate of $28.125 per hour and $281.25 per week.  Therefore the court awarded Hernandez $10,125.00 for unpaid overtime wages plus 100% that amount in liquidated damages, totaling $20,250.00.

25.     When using the correct calculations as outlined by the **NYLL**, the overtime pay rate for each Plaintiff is $22.50 and therefore, BARAHONA's unpaid wages are reduced from $42,750.00 to $34,200.00, a total reduction of $8,550.00 or 20%.  Consequently, the liquidated damages would be reduced by the same amount and percentage, from $85,500.00 to $68,400.00.  Moreover, counsel fees and pre-judgment interest would also be reduced and possibly more than 20%.

26.     When using the correct calculations pursuant to **NYLL**, for the Plaintiff, HERNANDEZ, his total award for unpaid overtime wages and liquidated damages is reduced from $20,250.00 by 20% to $16,200.00.  Of course, counsel fees and pre-judgment interest would also be reduced.

27.     The court also made a manifest error of fact by not factoring the non-work holidays during each "busy season" or 36-week period from March to November every year.  There was no testimony ever in this matter, that the plaintiffs or the company worked on holidays, which indeed the Defendant, NIETO, corroborates in his attached affidavit.

28.     Every "busy season" encompasses five (5) U.S. Holidays, to wit, Memorial Day, Juneteenth, Independence Day, Labor Day and Veteran's Day.

29.     When calculating plaintiff BARAHONA's claim which the court determined lasted 4 years plus 8 weeks, there were 21 U.S. Holidays in which he did not work.  Which means the most he worked during those weeks were four days at the court's determined 10 hours per day, equaling 40 hours for those weeks, and not eligible for overtime wages according to the **NYLL**.

30.     When calculating BARAHONA's unpaid overtime wages and using the court's overtime hourly pay rate at $28.125 per hour and $281.25 per week, this reduces his award for unpaid overtime wages from $42,750.00 to $36,843.75 for unpaid overtime wages.

31.     When calculating BARAHONA's unpaid overtime wages using the correct overtime pay rate of $22.50 per overtime hour and multiplied by 10 hours per week, equals $225.00 per week.  Multiply that amount by 21 weeks equals $4,725.00. Minus that amount from $34,200.00 equals $29,475.00 or an almost 14% reduction.

32.    The Court mentioned darkness as being a possible factor to prevent the plaintiffs from working overtime (see Trial Transcript, Exhibit C, Page _____, Lines _ but apparently did not factor in the on average 30 days during each "busy season" where the sun sets before 6:00 p.m.  This would result in 5 additional weeks where there was no overtime worked.  This would result in a reduction as per the court's calculations of $281.25 per week and multiplied by 5 weeks and totaling another reduction of $1,406.25 from the court's computations and now reducing BARAHONA's unpaid overtime wages to $35,437.50.  Accordingly, the liquidated damages would also be reduced by that amount, equaling a total reduction of unpaid overtime and liquidated damages of $2,812.50.

33.    Of course, Defendants' computations would deduct 5 more weeks at $225.00 per week and total a $1,125.00 deduction for unpaid overtime wages bringing that award down to $28,350.00 as well as the liquidated damages in the same amount.

34.     The Court also never considered inclement weather in its damages calculations and how inclement weather would reduce the damages.  The "busy season" from March to Mid-November on Long Island is susceptible to several forms of inclement weather, including snowfall in March and November, Rain Showers in the Spring, March through May, thunderstorms in the Summer months of June, July and August, which then leads Hurricane Season beginning in August and season for North Easter Storms, beginning roughly the same time and continuing through Winter.

35.    The Plaintiff, Barahona testified at this deposition that when it was raining he and the rest of the crew working for the Defendants would stop working and the work-day would be cut short.  See Barahona EBT Transcript, Page 19, Lines 7-10, as Exhibit D.  However, this fact was never elicited by the Court or  the Defendant at trial.

36.    The Court committed a manifest error of law when it erred in applying the <u>New York Labor Law, Article 6</u>, in calculating the Plaintiffs' regular hourly pay rate, because it used the same formula to determine the rate as for an employee who is paid by the hour, rather

than correctly using the formula for someone who is paid by salary or receives straight pay, as should have been done in this case.  <u>New York Labor Law, Article 6</u>.

37.    The Court committed a manifest error of fact by not factoring all the variables delineated above in order to reduce the damages awarded to the plaintiffs against the defendants.  Obviously, every year and certainly in the over four-year span that the court determined was the length of time of Barahona's damages, there were days with no work or shortened days, due to holidays, darkness, snow, rain, thunderstorms, hurricanes, possibly tornadoes, Nor'easter's, etc.  Not to mention, the court never factored in the Defendant, Nieto's statement in his affidavit, in which the court read from when giving its decision, that during the Summer of 2018, the Plaintiff, Barahona, stopped working for the Defendants for three (3) months to go work for a roofing company. See Defendant, Nieto, Affidavit as Exhibit P, Page 2, Paragraph 8.

38.    The three (3) months in which the Plaintiff, Barahona, did not work for the Defendants during the Summer of 2018 amounted to 13 weeks.  13 weeks according to court's trial calculations is equivalent to a $3,656.25 deduction from that Plaintiff's unpaid overtime wage claim and a deduction in the same amount from that plaintiff's liquidated damages award.

39.    This leads the discussion to another reason why a partial new trial should be granted and the court's findings set aside, altered or amended.

## <u>Trial Irregularities</u>

40.    The trial transcript (Exhibit C) illustrates the Court made a manifest error in law when it delivered its ruling regarding the liquidated damages provision in the <u>NYLL</u> which

guided its decision to grant liquidated damages to each plaintiff in an amount equal to 100% of each plaintiff's unpaid overtime wage claim. This equals 50% of the entire damages that the court ordered in favor of the plaintiffs' combined.

41.    The court stated during its ruling, "As counsel properly points out the standard for willfulness . . . *the defendant would have to show that he was paying consistent with the law*, which he cannot.  So therefore, the question of double damages comes to the fore.  What that means is that the judgment for Mr. Barahona is $85,500.00." *[emphasis added]*  Exhibit C, P. 73, L. 2-8.

42.    Respectfully, the Court is incorrect in that recitation of the statute and standard for willfulness.  The defendant need not "show he was paying consistent with the law," but rather the employer must *"prove a good faith basis to believe that its underpayment of wages was in compliance with the law*, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . ." *[emphasis added]*.

43.    Reading the court's ruling as cited above it appears the court is increasing the burden on the defendants as to what they must demonstrate, to avoid liquidated damages being levied against them.  "Showing you are paying consistent with the law," is a significantly tougher burden than "prov[ing] a good faith basis to believe the wages he was paying was in compliance with the law."  The ladder quotation is citing the <u>New York Labor Law § 198 (1-a))</u>, and in defendants' opinion, to be less burdensome.  The former quotation was used by the court in its decision here, and in defendants' position more burdensome than the law.

44.    Reading the decision is confusing because I am uncertain if the Court held the Defendants violated the statute willfully.  It appears from the language at that portion of the decision, the court is in fact making a finding of willful misconduct.

45. **New York Labor Law § 198 (1-a)**.  In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of **section one hundred ninety-four** of this article.

46.   The court also appears to have decided liability and is considering damages before the lunch break.  The Court Stated prior to the break, "…there is a good issue about the Sun going down.  I don't know that you're working 9 o'clock at night in March cutting trees. That makes no sense to me at all.  Exhibit C, P. 57, L. 10-13.

47.   But then the Court added immediately prior to breaking for Lunch, the following:

THE COURT:      Correct. There are limbs that get cut off, and they're not tree Limbs, they're human limbs that cut off in the darkness.  So there is the issue of if there's overtime time how you go about calculating it.  Everyone takes the next hour to think about that.  Meet back here at a quarter to two and figure it all out.  Exhibit C, P. 57, L. 15-20.

48.   There were many other things that were irregular and prejudicial, I reserve my rights to object to all in the future.  The Court offered the Plaintiffs' attorney to give an opening statement but did not offer the Defendant, William Nieto, to do the same.

49.     The court's ruling on liquidated damages is unsupported because Mr. Nieto stated at trial which is documented in the record, that he believed he was making payments to the plaintiffs in compliance with the law when he stated, "What I think is that I don't think that what they're asking is fair because I feel l have complied with all payments…..Because of that I am refusing to pay any such amount so exaggerated…" Exhibit C, P. 68, L. 18-23.

50.     I believe this evidence supports a ruling for no liquid damages at the very least.

51.     The Judge also allowed the Plaintiffs' attorney to introduce the times for Sunset with no such evidence admitted into evidence.

52.     The transcript reveals and very vividly from pages 56-75 that this trial was conducted in a manner that I respectfully state was wanting of more justice.

53.     Final point, the Plaintiffs have never provided any identification for themselves since this matter commenced or ever.  Plaintiffs' attorney refused to allow his clients to provide identification.  That is an issue to this day. Exhibit D & E.

54.     I pray this Court prior to awarding monetary damages, and hopefully will not, but at least will find out who the plaintiffs are.  The plaintiff Barahona gave 4 names he is known by at his deposition and admitted at his deposition he gave a police officer a false address when he received a ticket when he was driving defendants' truck.

55.     The Plaintiffs filed with their complaint they are not know by any aliases but obviously that is not true as the caption of this matter has "Mr. Barahona's" first name spelled "JONATHAN," but at his deposition he stated his first name was actually spelled correctly as, "JONATAN."  Exhibit D.

56.     I believe the Plaintiffs are illegal aliens and are perpetrating a fraud on the Court.  I don't know as counsel who has been on this case for a combined several years, what the

plaintiffs' actual names are.  The Court should enforce its alias rule and ascertain their identities for obvious reasons.

57.    Pursuant to **FRCP RULE 60**, the Defendants respectfully request the Court to relieve both Defendants from the Judgment/Order.  Specifically, the Defendants should both be relieved from the Judgment/Order pursuant to **FRCP RULE 60(b)(3)**, due to a Fraud being perpetrated on the Court; pursuant to **FRCP RULE 60(b)(4)**, due to the Judgment/Order being Void; and pursuant to **FRCP RULE 60(b)(6)**, due to the Judgment/Order lacking any reason.

58.    I know that the plaintiffs' immigration status does not prevent them from having standing and being awarded damages, but not revealing their identity should.

59.    Also, the Southern District has denied claimants whose immigration status is not legal, money damages for missed work due to an employer's actions even though they do not deny damages for actual work they perform.  I would like to raise this argument further at trial, hearing or additional papers or otherwise.

60.    Defendants will file a motion to vacate the default of the corporate defendant in a short amount of time but not doing so here due to time constraints but is reserving all rights.

## **CONCLUSION**

The Defendants do respectfully request that all relief requested herein is granted, including but not limited to, all relief requested pursuant to U.S. CONST. AMEND. VII, FRCP RULES 38, 39, 52, 59, 60 and 62, along with such other relief as this Court deems just and proper.

Dated: Island Park, New York
June 10, 2025

Yours, etc.,
THE LAW OFFICE OF GLENN J. INGOGLIA

*Glenn J. Ingoglia*

By:
GLENN J. INGOGLIA, ESQ. (GI 1655)
Attorney for Defendants
PARADISE TREE SERVICE & LANDSCAPE
CORP. and WILLIAM NIETO
104 Long Beach Road
Island Park, New York 11558
(516) 432-0500 Telephone
(516) 432-7333 Facsimile
glenn@ingoglialaw.com

TO:
THE CLERK OF THE COURT
U.S. DIST. COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP
100 Federal Plaza
Central Islip, NY 11722

Steven J. Moser, Esq.
Moser Law Firm, P.C.
133C New York Avenue
P.O. Box 710
Huntington, New York 11743
(631) 824-0200
steven.moser@moserlawfirm.com