FILED
CLERK

10/9/2025 12:41 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JONATHAN BARAHONA and HECTOR
HERNANDEZ,

                        Plaintiffs,

        -against-

PARADISE TREE SERVICE & LANDSCAPE
CORP. and WILLIAM NIETO,

                   Defendants.

----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

21-CV-5400 (GRB) (LGD)

**GARY R. BROWN, United States District Judge:**

> *"It was the saying of an eminent scholar that an excellent memory was needful for liars; for they, telling many untruths, had need of a good memory, to be able to remember what untruths they have told, lest afterwards they be taken in their lying, contradicting themselves."*
>
>                -Robert Cawdry, *A Treasury, Or Storehouse of Similes* (1868)

Crying fraud upon the court, Glenn J. Ingoglia, Esq., erstwhile counsel for defendants, hurls baseless accusations at the plaintiffs, their counsel and the Court itself, all in the name of seeking a new "partial trial," relief from default and/or relief from findings and a prospective judgment following a bench trial in this matter. Mr. Ingoglia abandoned his clients shortly before trial, allowing default to be entered against the corporate defendant and leaving its principal, with good though limited English skills, to fend for himself during the proceeding. Thus, while Mr. Ingoglia's departure may have been convenient for him, it inflicted great inconvenience upon everyone else involved in this matter. Now, Mr. Ingoglia attempts to reenter

the case, reargue various pre-trial issues and relitigate the trial.  In so doing, he makes assertions of law and fact – many under oath – which are demonstrably false and misleading.  Thus, Mr. Ingoglia may be correct in identifying a seeming attempt to perpetrate a fraud upon the Court. The problem is that he is the one behind this endeavor.

After careful consideration, the Court finds that the motions made by Mr. Ingoglia on behalf of the defendants are entirely without merit.  However, to the extent that counsel urges the Court to hold additional proceedings in this matter, he has, in a sense, succeeded.  Unfortunately, the purpose of that proceeding will be to determine whether, and to what extent, the Court should consider the imposition of sanctions under Rule 11 and/or 28 U.S.C. § 1927 against him.

### Relevant Facts and Procedural History

Four years ago, this case was commenced via the filing of a complaint by plaintiffs Jonatan Barahona and Hector Hernandez against defendants William Nieto and his company, Paradise Tree Service & Landscape Corp. ("Paradise"), asserting claims under the Fair Labor Standards Act and the New York Labor Law based on allegations of failure to pay minimum wage, overtime, spread of hours and wage statement and notice violation.  DE 1.  Within the prescribed 60-day period, Mr. Ingoglia filed an answer to the complaint asserting seventeen affirmative defenses on behalf of defendants.  DE 6.

The matter proceeded to discovery, but storm clouds lurked just over the horizon. Initially, counsel came to loggerheads over the provision of the company's employment records. Counsel for plaintiffs attempted to resolve the impasse informally (as required by this Court's rules).  Since Mr. Ingoglia had failed to comply with an order to produce any payroll records (items which are critical in this type of labor action) or confirm that no such records existed, plaintiffs' counsel advised that he would be forced to make a motion before the Court.  DE 11.

Apparently, undeterred by the law or any sense of professionalism, Mr. Ingoglia sent an email to plaintiff's counsel stating that "there is no such order as you falsely state in your letter," and threatening that, if plaintiffs' counsel made such a motion "I will seek sanctions and costs for frivolous practice." DE 11 at 1. As there was such an order, counsel's threat was baseless and inappropriate. *See* Order dated March 14, 2022.

Perhaps recognizing the emptiness of his threat, Mr. Ingoglia adopted a new strategy: he simply failed to oppose the motion made by plaintiffs' counsel, then failed to appear despite direction to do so. *Id.*; Order dated March 9, 2022; *cf.* Order dated July 17, 2023 ("Defendants have failed to respond to this motion"). Finally, following the entry of a *second* motion to compel, defendants finally filed a statement averring to the absence of time records, payroll records or records of employment policies. DE 16. These circumstances, which were well known to the defendants and their counsel, rendered achieving judgment in defendants' favor, as Mr. Ingoglia would later concede, "not likely." DE 52-1 ¶ 12; Order dated July 5, 2022; DE 16. However, through his rancorous litigation tactics, Mr. Ingoglia delayed making this inevitable concession for months, engendering delay and several rounds of needless motion practice.

The matter proceeded through discovery with Mr. Ingoglia repeatedly seeking sanctions while accusing plaintiffs' counsel – an attorney whose many appearances before this Court have been characterized by professionalism – of "growing more litigious as his clients' claims become . . . not viable;" "deliberately making false representations to this Court;" engaging in frivolous conduct; and making false statements in an attempt "to mislead this Court." DE 14, 19, 34, 37. Mr. Ingoglia next directed his venom toward his own clients.

*Mr. Ingoglia's Ignominious Departure from and Return to the Case*

In his instant filings, Mr. Ingoglia represents the following under penalty of perjury:

> I used to represent the Defendants in this matter until February 8, 2024, when I was relieved due to my client was unable to afford my services, any longer.

DE 91-3 ¶ 2. Well, not exactly, or more accurately, not at all. In seeking to be relieved as counsel in February 2024, Mr. Ingoglia filed an affirmation – also under penalty of perjury – explaining that, while he was having difficulties getting paid by his clients, he recognized that, under the law, "non-payment of counsel fees alone will not entitle an attorney to withdraw." DE 52-1 ¶ 7 (citing cases). Instead, Ingoglia premised his motion on non-payment coupled with fundamental disagreement about the quality of the legal services provided:

> Mr. Nieto told me then that he was unsatisfied in my representation because as he put it "he was in the same position as when he hired me." I of course, disputed that baseless assertion and reminded him that he had not kept any records and therefore, achieving a judgment in his favor dismissing Plaintiffs' claims entirely was not likely and never promised.

*Id.* ¶ 12. Ingoglia continued that "Mr. Nieto has obviously lost any confidence in me he may have had," concluding that the Court should relieve him based on "an irreconcilable conflict between attorney and client," combined with nonpayment of fees. *Id.* ¶¶ 6; 17.

While one might think that, given the history stated above, this assertion was at least *partly* true, *i.e.* that his clients' inability to pay represented one ground for his departure from the case, review of his earlier sworn statement reveals that even this narrow construction is false. In his application to be relieved, counsel provided factual assertions under oath demonstrating that Mr. Nieto owned assets exceeding $1.5 million, leading Ingoglia to conclude "this is not a case of a client who has no resources and cannot afford to pay his counsel fees." DE 52-1, ¶ 18. So, far from some kind of mistake, Mr. Ingoglia's current representation concerning the reason for his departure from the case can only be viewed as a misrepresentation.

*Proceedings Subsequent to Mr. Ingoglia's Withdrawal*

After Ingoglia withdrew, defendants were unable to retain counsel. DE 57. Plaintiffs

moved to strike the answer of Paradise based upon the familiar tenet that a business entity cannot proceed without representation.  DE 71.  The magistrate judge struck the answer but denied entry of default judgment pending the trial.

On consent, the case proceeded to a bench trial on May 12, 2025.  Mr. Nieto, an individual who had limited English skills, defended himself *pro se*, assisted by an interpreter and his son, who also served as a witness.  On consent of plaintiff's counsel, the Court dismissed the FLSA claims based upon a failure to provide evidence concerning the threshold income requirements.  Tr. 63.  Furthermore, the Court found that, considering the plaintiffs' testimony showing an absence of harm, the wage notice and statement claims were subject to dismissal without prejudice under *Guthrie v. Rainbow Fencing Inc*., 113 F.4th 300, 308 (2d Cir. 2024) ("[A] plaintiff must show some causal connection between the lack of accurate notices and the downstream harm").  Tr. 67.  The Court heard testimony from both plaintiffs, defendant Nieto and his son.  Plaintiff's counsel provided a damages calculation of $477,559.10, inclusive of pre-judgment interest.  Tr. 64.

*The Court's Decision*

Following argument by plaintiffs' counsel and defendant Nieto, the Court rendered its findings and determination.  As an initial matter, the Court confirmed the abandonment of the FLSA claims and the NYLL notice and statement claims, the latter claims being subject to dismissal without prejudice.  Tr. 68.  The Court then found that it was beyond question that the defendants failed to pay plaintiffs for at least certain overtime hours based on concessions made by Mr. Nieto.  Tr. 70.  The Court credited certain portions of the plaintiffs' testimony, though raised questions about the accuracy of some information provided.  Tr. 70-71.  The Court then invoked its authority to reach "a reasoned estimate based on the evidence available."  Tr. 71.  As

5

one court observed:

> When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (citation omitted). The burden then shifts to the employer to come forward with evidence either to show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Id.*

*Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL 3835960, at *16 (S.D.N.Y. 2017)

The Court explained the various elements included in its calculation, such as the periods during which plaintiffs worked and the likelihood of overtime work during different seasons. Tr. 72*ff*. Having found that the defendant failed to meet his burden to show under the NYLL that his failure to pay was made in good faith, the Court found that double damages were appropriate. Tr. 73. Based on these calculations, the Court determined that plaintiff Barahona was entitled to judgment in the amount of $85,500, while plaintiff Hernandez was entitled to $20,500, exclusive of interest, costs and attorneys' fees. Tr. 73. Plaintiffs' counsel was directed to submit a proposed order, while Mr. Nieto was given the opportunity to respond. Tr. 75. Plaintiffs' counsel, consistent with the Court's direction, submitted a proposed order. DE 87.

And, just like that, Mr. Ingoglia returned. Seemingly having reconciled his "irreconcilable" differences with his clients, Mr. Ingoglia vehemently objected to the proposed judgment in hastily-prepared filings, seeking relief under Rules 39, 52, 55, 59, 60 and 62 of the

Federal Rules of Civil Procedure and the Seventh Amendment of the U.S. Constitution.[1]  DE 90.

In a reply, Mr. Ingoglia claims that the trial resulted in "Defendants being deprived their 7[th] and

10th Amendment rights," an assertion that proves difficult to decipher.  DE 96 ¶ 3.[2]  He quickly

followed this initial filing with a motion for a "new partial trial," the taking of additional

testimony, the amendment of findings of fact and conclusions of law, amendment of judgment,

staying enforcement of judgment, vacatur of default and the setting aside of the Court's previous

rulings.  DE 91.  This decision follows.

## DISCUSSION

### *Applicable Standard for Post-Verdict Motions*

To the extent defendants move for judgment as a matter of law, a new trial and relief

from findings, these matters are decided based upon the well-established standard for the

consideration of such motions in this Circuit as discussed in detail in *Anderson v. Aparicio,* 25 F.

Supp. 3d 303 (E.D.N.Y. 2014), *aff'd and remanded sub nom. Anderson v. Cty. of Suffolk,* 621 F.

App'x 54 (2d Cir. 2015), which discussion is hereby incorporated by reference.

Armed, once again, with the accusatory blunderbuss he had used to savage his opponent

and his client, Mr. Ingoglia now takes aim squarely at the Court.  Mr. Ingoglia makes many wild

---

[1] The Seventh Amendment challenge seemingly emanates from a single statement by defendant Nieto asserting "The Judge recommended I not have a jury and I listened and now regret it."  DE 91-2 ¶ 2.  Importantly, the suggestion that defendant consider a bench trial particularly given his *pro se* status – advice by which the Court stands – was made at a conference on April 23, 2025. DE 84.  The Court did not demand a determination on this issue; rather, such decision was made by defendant together with plaintiff's counsel in separate discussions, which was communicated to the Court about a week later.  DE 85.  Such remorseful hindsight does not in any way undermine the voluntariness or force of the parties' joint decision to proceed without a jury.
[2] Mr. Ingoglia further argues to this Court that "several irregularities amounted to a violation of defendants' Tenth Amendment Right to a fair trial."  DE 96 ¶ 16.  As the Tenth Amendment concerns the reservation of undelegated powers to the states and the citizenry, Mr. Ingoglia's argument reflects a failure to engage in even the most basic legal research before slinging unfounded arguments at this Court.

accusations, only some of which will be mentioned, and most will not be dignified with a response. These include suggestions that the Court had "assume[d] . . . that the defendants are liable," DE 91 ¶ 12, failed to account for a "fact [that] was never elicited by the Court or the Defendant at trial," *id.* ¶ 35, "also appears to have decided liability [ ] before the lunch break," *id.* ¶ 46, and engaged in "many other things that were irregular and prejudicial" which largely remain unspecified. *Id.* ¶ 48. Then, without any basis or explanation whatsoever, counsel has the temerity to assert that the "transcript reveals and very vividly . . . that this trial was conducted in a manner that I respectfully state was wanting of more justice." *Id.* ¶ 52. The word "respectfully" in that sentence seems inapposite.

Counsel also complains that the Court considered "the times for Sunset with no such evidence admitted into evidence." *Id.* ¶ 51. There are several ironies here. First, the undersigned raised questions about sunset to significantly *reduce* the claims of overtime pay made by plaintiffs. Tr. 70-71. Second, since the age of Copernicus, the times of sunrise and sunset are facts readily ascertained and easily subject to judicial notice. *United States v. Rankin*, 2024 WL 1513688, at *4 n.9 (E.D.N.Y. 2024) ("The Court is permitted to, and does, take judicial notice of these two facts").

Finally, since discovery in this matter is closed and the case has already been tried, Mr. Ingoglia's motion to compel is denied. DE 100.

Weeding out his irresponsible rhetoric, Mr. Ingolia's filings raise precious few issues requiring discussion, which are examined below:

*Calculation of Overtime Wage Rate*

Mr. Ingoglia argues that the Court "committed manifest error of law" in determining the properly hourly rate for the calculation of overtime pay. Specifically, he argues that, because

plaintiffs were paid on a "salary per day" basis, the Court erred by dividing the $750 paid per week to the plaintiffs by forty hours.  DE 91 ¶¶ 18-19.  Instead, he suggests that the $750 should be divided by the 50 hours worked per week, or $15.00 per hour.  *Id.* at ¶ 20.  Mr. Ingoglia asserts, without true citation, that "[a]ccording to the NYLL, in order to calculate a salaried worker's regular hourly pay rate, in order to determine overtime pay for hours worked more than 40 during a week, you divide the total pay received during the week by the number of hours worked."  *Id.*.

The problem with this argument is twofold: it ignores both the facts and the law.  At trial, defendant Nieto repeatedly and plainly stated that the daily rate paid to plaintiffs – $150 – was intended to compensate for eight hours' work.  Tr. 29-30.  Having established that the intention of the parties as to the period covered by these payment – here eight hours – that sum becomes the denominator used to determine an hourly rate.  "Where, as here, the employers paid their employees a fixed daily salary, 'the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary designated by the number of hours which the salary is intended to compensate."  *De Los Santos v. Marte Constr., Inc*., No. 18-CV-10748 (PAE) (KHP), 2020 U.S. Dist. LEXIS 224592, at *15 (S.D.N.Y. Nov. 24, 2020) (citing 29 CFR § 778.113(a)); *Quito v. KW Ny Constr. Inc.,* 2024 U.S. Dist. LEXIS 92696, at *3 (S.D.N.Y. May 20, 2024) (dividing daily rate by "eight (8) hours, for which Plaintiffs' pay was intended to cover.").

Other supposed errors identified by Mr. Ingoglia prove as specious.  For example, he objects that the Court failed to account for five holidays encompassed during the busy season, "Memorial Day, Juneteenth, Independence Day, Labor Day and Veteran's Day."  DE 91 at ¶ 28. At trial, there was no testimony concerning paid or unpaid holidays, or whether plaintiffs worked

on such days (which could invoke other labor law provisions).  Moreover, Juneteenth did not become a recognized national holiday until 2021 – well after the relevant events in this case.

Finally, Mr. Ingoglia's nitpicking calculations – even if timely submitted before the Court reached its decision – ignore a critical component in this case.  Where defendants fail to maintain legally required labor records, a factfinder is permitted to make a reasonable estimate of the losses based upon the available evidence.  *Gonzalez v. Masters Health Food Serv.*, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 688) ("If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate").  Such approximations may be based upon plaintiffs' unrebutted recollections.  *Chichinadze v. BG Bar, Inc.*, 517 F. Supp. 3d 240, 253 (S.D.N.Y. 2021) ("[W]here an employer fails to keep adequate records or provide statements of wages to employees …, the employer shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.") (internal quotations omitted).

At the trial, the Court endeavored to develop a reasonable estimate of the damages in the context of an adversarial proceeding.  By its very nature, an approximation may vary from a precise accounting, encompassing slightly higher or lower figures at different junctures.  Thus, it would be highly unfair to revise the Court's estimate based on the cherry-picked items Mr. Ingoglia now invokes, virtually none of which are rooted in evidence presented at trial.

*Misstatement of the Standard for Imposing Liquidated Damages*

In what seems another example of sharp practice, Mr. Ingoglia selectively and myopically extracts a single, poorly crafted sentence in the Court's oral ruling which seems to misstate the standard for the imposition of liquidated damages under the NYLL.  DE 91 ¶ 41,

*quoting* Tr. 73. This excerpt, he argues, proves "a significantly tougher burden than 'prov[ing] a good faith basis to believe the wages he was paying was in compliance with the law.' The ladder [sic] quotation is citing the New York Labor Law §198(1-a)." *Id.* ¶ 43. Counsel opportunistically ignores the fact that, earlier in its ruling, the Court set forth the precise statutory language referenced in NYLL 198(1-a), and thus plainly had this standard in mind in reaching its determination. Tr. 69.

For avoidance of doubt, the individual defendant offered nothing to suggest that he made any attempt to comply with the law. To the contrary, it was uncontested that he maintained no records, made payments in cash, failed to comply with wage statement and notice requirements and, throughout these proceedings, made false and inconsistent statements, from which the Court draws an inference of intentional non-compliance.

**Conclusion**

Based on the foregoing, the motions filed by defendants' counsel are entirely without basis, and the proposed order submitted by plaintiffs' counsel at DE 87 is hereby deemed entered. Counsel shall meet and confer to establish an agreed upon schedule to brief and argue the remaining issues, to wit: (1) the Court's potential sua sponte imposition of sanctions under Rule 11 and/or 28 U.S.C. § 1927, and (2) application for attorneys' fees by plaintiffs' counsel.

Dated: Central Islip, New York
    October 9, 2025

/s/ Gary R. Brown
HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE